

U.S. Department of Justice

Federal Bureau of Prisons

---

Office of the Director                    Washington, DC 20534

November 15, 1995

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM:        Kathleen M. Hawk, Director
             Federal Bureau of Prisons

SUBJECT:     Guidelines for Implementation of the Zimmer
             Amendment

This memorandum provides guidance to wardens on how provisions of the Zimmer Amendment will be implemented in all Bureau of Prisons (BOP) institutions. The House and Senate have passed the Zimmer Amendment (copy attached) to the Appropriations Bill and it is expected to be adopted in conference in November. In anticipation of this, the purpose of this memorandum is to give you an advance implementation plan, to address specific interpretation issues and to ensure consistency in how we will make changes in all BOP institutions.

I fully appreciate that the timing of this issue could not be worse. Nonetheless, all indications are this legislation is inevitable. Provisions of the Zimmer Amendment relate only to the use of appropriated funds. Given our understanding of the intent, however, the guidance provided herein may vary slightly from a literal reading of the amendment.

Regardless of when the Fiscal Year 1996 budget is finally adopted, the guidance in this memorandum is <u>effective immediately</u>.



PLAINTIFF'S
EXHIBIT
9

2

A. **In-Cell Television Viewing:**

This section prohibits use of funds for providing in-cell television viewing except for prisoners who are segregated from the general prison population for their own safety.

1. The BOP typically does not provide in-cell television viewing for inmates.

2. Except as provided in #'s 3, 4, 5 and 6 below, in-cell television viewing will not be permitted, whether funded with S&E funds, Trust Fund profits, inmate organization funds or donations from community sources.

3. Inmates housed in cells on a regular and continuous basis (e.g., USP Marion, ADX Florence, etc.) may continue to be provided with in-cell television viewing since this is the most common medium by which they access education and religious services and since these inmates are confined for purposes related to the security of the institution, for the safety of staff and other inmates or for their own safety. S&E funds may be used to provide television viewing for these inmates. This paragraph does not afford in-cell television to inmates confined in special housing units.

4. At medical centers, inmates confined to their cells or rooms for serious, chronic medical conditions may, at the discretion of the warden, be afforded in-cell television.

5. Witsec units which currently provide the use of in-cell televisions may continue to do so with appropriated funds. This is allowed by the "for their own safety" provisions of the Zimmer language.

6. Certain institutions currently provide the use of an in-cell television on a rotating basis as part of an inmate incentive award program to promote high standards of sanitation. These institutions may continue this program, but no funds of any type will be expended for the repair or upkeep of the televisions. After the televisions become inoperable, the program will cease. Institutions which currently do not have this program will not initiate it.

2

3

7. The BOP will not specify a requirement that privatized facilities which house BOP inmates provide in-cell television viewing. However, where such facilities offer this, they will be permitted to continue doing so provided the facility offers a sound correctional environment and there is no direct additional charge to the Bureau.

B. **Viewing of R, X or NC-17 Rated Movies:**

This section prohibits the use of funds for providing the viewing of R, X or NC-17 rated movies, through whatever medium presented.

1. Current BOP policy prohibits the showing of X-rated movies and the use of S&E appropriations for the purchase of premium movie channels, video licenses or video rentals. This policy will continue.

2. Consistent with the recent Executive Staff's decision on Inmate Organizations, institutions may use remaining inmate organization funds until inmate organizations have closed-out financial operations for movies or videos. After this date, only Trust Fund profits may be used to provide for **one** premium cable movie channel or one movie video license and movie rentals.

3. In FY 1995, no S&E funds will be used to provide the showing of R, X or NC-17 rated movies. In order to allow for an effective transition from existing premium movie contracts, the expenditure of inmate organization monies (up until financial operations are closed-out) or Trust Fund monies for the showing of R-rated movies will be permitted through FY 1996.

4. Commencing in FY 1997, no R, X or NC-17 rated movies will be shown, through whatever medium presented. Likewise, in FY 1997, movies rented through a video agreement may not be R, X or NC-17 rated.

5. The restrictions discussed above apply to the procuring of movies by the following means: through video licenses and/or rentals, land cable services, and satellite transmissions.

6. Inmate Organization funds (until financial operations are closed-out) or Trust Fund profits may be used to provide for Pay-for-View sports events if no R, X or NC-17 rated material is shown.

3

5

8. Weightlifting equipment may not be transferred from one institution to the other. This also applies to institutions within a complex (e.g., weightlifting equipment may not be transferred from FCI Allenwood to USP Allenwood).

9. Institutions undergoing a mission change may not surplus their weightlifting equipment to another institution.

10. Institutions may not transfer weightlifting equipment from the inmate areas to the staff fitness areas or vice versa.

11. Institutions are encouraged to utilize alternatives such as fitness courses or equipment which enhances aerobic fitness (e.g., fitness stations, sit-up boards, exercise bikes, treadmills, etc.). These types of equipment help to provide fitness activities which promote healthy lifestyle traits, reduce preventable illnesses, and are consistent with BOP Program Statements on Inmate Health Promotion and Disease Prevention and Physical Fitness and Health Education. Equipment should be functional, durable and be able to withstand heavy inmate use; however, institutions should not purchase equipment that gives the appearance of belonging in a health club (e.g., exercise bikes that have computerized displays).

D. **Possession of In-cell Coffee Pots, Hot Plates or Heating Elements:**

This section prohibits the use of funds for providing inmates with the possession of in-cell coffee pots, hot plates or heating elements.

1. Current policy precludes inmates from possessing these items. This policy will continue.

E. **Use or Possession of any Electric or Electronic Musical Instrument:**

This section prohibits the use of funds for inmates' use or possession of electric or electronic musical instruments.

1. Institutions which currently have electric or electronic instruments may retain these instruments. No appropriated funds will be used to purchase new or to repair existing equipment.

4

6

2. New institutions will not purchase electric or electronic instruments.

3. Trust Fund profits or inmate organization funds will not be used to purchase or repair electric or electronic equipment. Donations of these types of instruments will not be accepted.

4. The only authorized exception is electric or electronic equipment, which is used in conjunction with religious activities, stored in the chapel area and is under the supervision of the Religious Services Department. Appropriated funds may be used to purchase or maintain such equipment in all BOP facilities.

Some of the provisions of the Zimmer Amendment will not negatively affect our operations because the BOP never provided some of the amenities or services. The gradual phasing out of activities such as weightlifting, using electric musical instruments, viewing of movies, including R-rated ones, will have an impact. These activities added variety to our recreation programs which helped to keep our inmate population constructively occupied. How well the phasing out of these programs will be accepted by the inmate population will depend on a number of factors. It will be critical for wardens to address these factors with their staff to ensure successful implementation of these provisions.

1. Candid Communication With the Inmate Population:

The inmate population should be told the impact the Zimmer Amendment provision will have on their recreation activities. Since this is a requirement of the Appropriations Bill, inmates will see the changes gradually when funds are not available to replace damaged or inoperable equipment. There is a very real possibility that the next Crime Bill, which will be debated in the near future, could go further into cutting our programs by not allowing us to keep our current equipment. We should not create false hopes with the inmates, since the impact of the Zimmer Amendment may only be the start.

Obviously, the manner in which the message is conveyed is just as important as the accuracy and substance of the message. It is very important that staff exercise strong interpersonal communication skills in getting the message out and listening to inmate concerns and issues.

5

7

2. <u>Increased Supervision in Recreation Areas:</u>

   As accessibility to certain equipment and activities decreases, the potential of inmate tension over limited equipment increases. Other staff will need to assist recreation staff in the supervision of these activities and be alert to any problems. Good interdepartmental communication will help to defuse small problems before they escalate.

3. <u>Alternative Options:</u>

   Institutions should develop alternative programs which may redirect inmate involvement from program activities being phased out to new activities which help maintain inmate discipline and provide constructive pursuits that cost-effectively occupy inmates' time.

The detail and examples provided in this memo are intended to address as many questions as possible and to ensure a consistent implementation. It is not intended to substitute for the application of good judgment and reason. I know that these developments are of concern to all of us. I am certain, however, that with your personal commitment and direction, the Bureau of Prisons can successfully implement this public policy decision.

If further clarification is needed, please contact your Regional Director or Steve Schwalb, Assistant Director, Industries, Education and Vocational Training.

Attachment

H.R. 2076
FY 1996 Commerce, Justice, State Appropriations Bill

Sec. 611. None of the funds made available in this Act shall be used to provide the following amenities or personal comforts in the Federal prison system—

(1) in-cell television viewing except for prisoners who are segregated from the general prison population for their own safety;

(2) the viewing of R, X, and NC-17 rated movies, through whatever medium presented;

(3) any instruction (live or through broadcasts) or training equipment for boxing, wrestling, judo, karate, or other martial art, or any bodybuilding or weightlifting equipment of any sort;

(4) possession of in-cell coffee pots, hot plates, or heating elements; or

(5) the use or possession of any electric or electronic musical instrument.