IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____
RICHARD JEWELL, et al,            )
                                  )
    Plaintiffs,                   )
                                  )
    v.                            )
                                  )   C.A. No. 97-408E
ALBERTO R. GONZALES, et al.       )   Judge McLaughlin
                                  )   Magistrate Judge Baxter
    Defendants.                   )
_____)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND
OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO THE BOP POLICY
IMPLEMENTING THE ZIMMER AMENDMENT'S PROHIBITION ON R-RATED MOVIES
MUST FAIL BECAUSE THEY HAVE NOT MET THE HEAVY BURDEN REQUIRED TO
OVERCOME THE PRESUMPTION THAT THE POLICY SATISFIES THE TURNER TEST

Plaintiffs have failed to meet their "heavy burden" to overcome the presumption that the BOP Policy implementing the Zimmer Amendment satisfies the Turner test.[1] It is well established by both the Supreme Court and Third Circuit that plaintiffs, not the government, have the burden of proof in challenging prison policy or regulations. See Overton v. Bazetta, 539 U.S. 126, 132 (2002)("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."); Shaw v.Murphy, 532 U.S. 223, 232 (2001)(recognizing that prisoner had "heavy burden" to overcome presumption that prison officials acted within their discretion); Williams v. Morton, 343 F.3d 212, 217 (3rd Cir.

---

[1] Plaintiffs specifically did not address defendants' contention that this case should be dismissed for lack of jurisdiction claiming that the argument was previously rejected by the Court. Article III standing, however, is a jurisdictional requirement that cannot be waived, and may be raised at any time in the proceeding. Fed. R. Civ. P. 12(h)(3).

2003)(quoting Overton).    In fact, the record establishes that the BOP Policy implementing the Zimmer Amendment fully satisfies the Turner test.

     A.     The BOP Policy Implementing the Zimmer Amendment Is Reasonably Related to Legitimate Penological Interests

Plaintiffs' assertion that there is no rational nexus between the BOP Policy implementing the Zimmer Amendment and legitimate penological interests must be rejected.  As explained in our opening papers, the BOP has provided declarations from two BOP officials which explain how the restriction on R-rated movies serves several penological interests; these interests include prison security, order, rehabilitation, punishment, deterrence and the provision of a safe and non-hostile work environment for prison staff.  See Defendants' Memorandum in Support of Motion for Summary Judgment ("Def. Mem.") at 12-16.

Plaintiffs' claim that the security nexus is not rational because the record submitted lacks evidence that R-rated movies actually created security or internal order problems at FCI McKean only demonstrates plaintiffs' misunderstanding of the Turner analysis.  Brief in Opposition to Defendants' Motion for Summary Judgment ("Pls. Opp.") at 4, 19.  Turner only requires a "logical connection" between the policy and the asserted goal, see 482 U.S. at 89, not empirical evidence that the policy in fact serves that goal.  See also Fraise v. Terhune, 283 F.3d 506, 518 (3rd Cir. 2002)(demanding hard statistical proof is fundamentally inconsistent with Turner).  Therefore, it is irrelevant that neither the deposition testimony nor the declarations detail any specific security incidents relating to movies.[2]

---

[2] It is certainly not logical to require BOP to wait for there to be a major security incident before they can choose to restrict a particular activity.  BOP has a duty to take steps to protect both inmates and correctional officers and can restrict those activities it believes affects prison security and order as long as the regulation does not run afoul of the Constitution.  Moreover, in

Defendants' declarations provide the requisite explanation of a "logical connection" between the restriction and the legitimate penological interests of prison security and order. First, Dr. Vanyur, Assistant Director of the Correctional Programs Division, who has worked for BOP for over 25 years and has a Masters and Doctorate in psychology, testified that the restriction is logically connected to security and order in several ways. Specifically, Dr. Vanyur explained that repeated exposure to violence can lead to desensitization to aspects of violent behavior which would otherwise be unpleasant or abhorrent and that exposure to depictions of violence increases the likelihood of violent behavior in teens and young adults, a population known to be at greater risk of violence toward others in a correctional setting. Vanyur Decl. at ¶ 11. Moreover, for persons who have engaged in repetitive violent acts over time, viewing depictions of violence can lead to mental and emotional rehearsal of their violent histories. Id. Dr. Vanyur further testified that prison populations contain a higher incidence of persons with histories of violence than normally found in society at large and that for this population, repeated exposure to graphic violence, criminal behavior, victimization and devaluation of others, entrenches mental rehearsal of past violence, criminal acts, and victimization, and reinforces an anticipatory mind set regarding future violence, crime, and victimization. Id. Additionally, Dr. Vanyur testified that for persons who have histories of substance abuse, research has shown simply viewing depictions of others using drugs can trigger heightened activity in pleasure centers in the brain and associated cravings for substances. Id.

---

this particular case, the BOP Policy restricting access to R-rated movies is based on a statutory mandate which BOP had no discretion to ignore.

Second, the record also shows that the inmate population at McKean is comprised of individuals convicted of a wide range of criminal offenses including individuals convicted of violent crimes, drug and sex-related crimes and that many of the inmates have anti-social, violent histories with mental health issues. Flatt Decl. ¶¶ 4, 5. And plaintiffs have not disputed that R-rated movies "may include hard language, or tough violence or nudity within sensual scenes, or drug abuse or other elements or a combination of some of the above." Therefore, based on the evidence in the record there is a logical connection between restricting R-rated movies which typically depict violence and drug and other anti-social behavior from prison inmates who may be violent, anti-social or drug addicts.

Plaintiffs attempt to discount Dr. Vanyur's conclusions by pointing out that he did not cite any specific studies regarding the connection between movies and criminogenic risk factors. This statement, while true, is of no consequence. In both his declaration and his deposition testimony, Dr. Vanyur makes it clear he has reviewed research and literature on criminogenic risk factors, and that he believes that the findings of that research can be applied to media such as movies. Pls. Exh. 7, pp 26-27; Vanyur Decl. ¶¶ 8-11. Moreover, plaintiffs have certainly not submitted evidence to the contrary.

Likewise, plaintiffs' claim that defendants have not supported the rehabilitation nexus should be summarily rejected. Pls. Opp. at 20. Plaintiffs basically argue that because Dr. Vanyur stated during his deposition that there was only a "possible connection" between movies and the criminogenic factors, that the testimony contained in his declaration should be discounted. This reasoning makes little sense. The testimony at his deposition is not inconsistent with his declaration. At his deposition, Dr. Vanyur was limited to answering the questions posed by

plaintiffs' counsel; whereas in his declaration, Dr. Vanyur was able to fully explain the connection between rehabilitation and the restriction on R-rated movies. As plaintiffs recognize, Dr. Vanyur's declaration specifically explains that R-rated movies contain messages that feed into various criminogenic risk factors and that restricting access to movies that reinforce violence, substance abuse, racial stereotypes and negative role models could help rehabilitative efforts. Vanyur Decl. ¶¶ 8-10. Moreover, plaintiffs do not provide any evidence to discount Dr. Vanyur's testimony.

Plaintiffs further argue that it is "absurd" to believe that there is a meaningful connection between restricting access to R-rated movies and the legitimate penological interests of punishment or deterrence claiming that the inability to view R-rated films is too negligible from the aspect of punishment. Pls. Opp. at 20-21. Plaintiffs are looking at this restriction out of context. The Zimmer Amendment (and the BOP Policy implementing it) prohibits funding for a number of prison amenities – the showing of certain movies being only one activity. It also prohibits in-cell television viewing, instruction or training equipment for boxing, wrestling, weightlifting and various martial arts, possession of coffee pots, hot plates or heating elements and use or possession of electric or electronic musical instruments. Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, § 611 (1996). The lack of all of these various amenities, in addition to the other restrictions to freedom that prison entails, certainly helps make prisons less desirable thereby punishing inmates and deterring them and others from committing crimes in the future. Vanyur Decl. ¶ 12. See also Kimberlin v. Department of Justice, 150 F.Supp.2d. 36, 44-45 (D.D.C. 2001), aff'd, 318 F.3d 228 (D.C. Cir. 2003)(pointing out that "Congress took away several amenities that, in the

aggregate, it perceived would make prisons more of a deterrent."). Thus, it is not irrational to believe that banning a broad spectrum of amenities and thereby making prison harsher and less desirable may produce a deterrent effect.[3]

Thus, plaintiffs have done nothing more than disagree with the BOP officials' conclusions that the BOP Policy implementing the Zimmer Amendment is reasonably related to legitimate penological interests. They have not cited to any studies nor provided any expert testimony that contradict Dr. Vanyur's conclusions. Therefore, plaintiffs have not met their burden of showing that the restriction does not satisfy the first factor of the Turner analysis.[4]

B.    The Remaining Turner Factors Are Satisfied

Plaintiffs only summarily address the three remaining Turner factors and they have failed to show that the restriction on R-rated movies does not satisfy these factors. Defendant refers the Court to its opening memorandum for a full discussion of why the BOP Policy satisfies the remaining three Turner factors. Def. Mem. at 17-21.

The second Turner factor is whether there are alternative means by which inmates can exercise the right in question. Plaintiffs argue that they have no access to R-rated films and therefore their ability to access ideas and information through movies is significantly burdened. Pls. Opp. at 25-26. This statement, even if true, does not demonstrate that the restriction does

---

[3] Plaintiffs take issue with the fact that Congress did not appear to consult with BOP prior to enacting the Zimmer Amendment. Pls. Opp. at 5-6. Congress clearly has the power to legislate prison conditions. Moreover, Congress is not required to consult with BOP prior to passing such legislation, and it is not required to engage in fact-finding to pass valid legislation. Heller v. Doe, 509 U.S. 312, 316 (1993).

[4] Plaintiff does not appear to challenge defendant's conclusion that the BOP Policy meets the "neutrality" requirement.

not satisfy the second factor. Plaintiffs do not dispute that there are other means of expression available to inmates. As explained in our opening memorandum, inmates have access to television, movies that are rated G, PG or are airline-edited, as well as a wide variety of written materials. Def. Mem. at 18. Alternatives do not need to be ideal, they need only be available. Overton, 539 U.S. at 135; Fraise, 283 F.3d at 519 (second factor satisfied because challenged policy did not foreclose all alternative avenues); Kimberlin, 150 F.Supp.2d at 47 (restriction on electronic instruments satisfied second Turner factor since inmates could express themselves musically using other instruments). Accordingly, because a broad range of expression is still available to the inmates, the second Turner factor is clearly satisfied.

The third and fourth factors – how accommodation of the inmates' asserted right would impact others in the prison environment, such as correctional officers or other inmates, and whether there are "obvious, easy alternatives" to the restriction in question – are also satisfied. Turner, 482 U.S. at 90. As to the third factor, plaintiffs assert that because defendant has not provided evidence that there was any adverse impact on security relating to the showing of R-rated movies, then the restriction must not have a negative impact on the safety of correctional officers or other inmates. Pls. Opp. at 26. As explained previously, evidence of specific incidents is not required to satisfy the Turner test. Moreover, defendants' declarations specifically detail how showing R-rated movies can pose threats to the safety of correctional officers and other inmates, Vanyur Decl. ¶7, 11, 13; Flatt Decl. ¶¶ 4-9, and plaintiffs have not provided the Court with any evidence that disputes these conclusions.

As to the fourth factor, the relevant inquiry is not whether BOP could have adopted a less restrictive alternative, but whether it could have adopted an alternative that imposed only de

minimis costs to legitimate penological interests.  Turner, 482 U.S. at 91.  The only alternative plaintiffs have suggested to is to revert back to the prior policy of individually reviewing each movie to determine if it is appropriate.[5]  Pls. Opp. at 27.   This alternative does not meet the high standard required under Turner.  As defendants have explained in their declarations, it is the showing of R-rated movies that could have an impact on prison security and order as well as on the rehabilitation of inmates.  Therefore, plaintiffs' suggested alternative would have more than a de minimis impact on these valid penological concerns .[6]

## CONCLUSION

For the foregoing reasons as well as those in defendants' opening memorandum, this Court should grant summary judgment in favor of defendants.


Dated: August 12, 2005               Respectfully submitted,

                                     PETER D. KEISLER
                                     Assistant Attorney General

                                     MARY BETH BUCHANAN
                                     United States Attorney

---

[5]  Of course, BOP could not independently change the policy since the Zimmer Amendment independently prohibits the showing of R-rated movies and the Zimmer Amendment has previously been upheld as constitutional by this Court.

[6]  Even if plaintiffs' alternative was otherwise sufficient, their contention that their alternative does not impact "costs" on the theory that it requires staff to review only 2 movies which would take no more than 3-4 hours per week, Pls. Opp. at 29, is unavailing.  As Dr. Vanyur testified in his deposition, these hours could be used by staff to conduct other activities, such as phone monitoring.  Pls. Exh 7 at 62-63.  Moreover, at best this criticism only relates to one penological interest (prison resources/administration), however, as established by the declarations, there are several legitimate penological interests served by the BOP Policy.

        CHRISTY C. WIEGAND
        Assistant U.S. Attorney

        _____/s/_____
        VINCENT M. GARVEY
        MARSHA S. EDNEY
        Attorneys, Department of Justice
        Civil Division
        20 Massachusetts Ave, N.W., Room 7148
        Washington, D.C. 20530
        Telephone: (202) 514-4520

        Attorneys for Defendants