IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD JEWELL, et al, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ALBERTO R. GONZALES, et al, ) <br> ) <br> Defendants. ) | <br><br><br><br><br><br>C.A. No. 97-408E <br> Judge McLaughlin <br> Magistrate Judge Baxter |

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**INTRODUCTION**

On August 31, 2005, Magistrate Judge Baxter issued a Report and Recommendation ("Report") recommending that Defendants' Motion for Summary Judgment be denied and that Plaintiffs' Cross-Motion for Summary Judgment be granted. For the reasons detailed below, defendants object to the Magistrate Judge's Report.

The factual, procedural and statutory background is fully set forth in Defendants' Memorandum in Support of the Motion for Summary Judgment ("Def. Mem."), which is incorporated by reference, and will not be repeated here. In short, plaintiffs, a class of federal prisoners housed at FCI McKean, challenge a BOP Policy which implements a federal statute that prohibits, <u>inter alia</u>, the use of federal funds for the viewing and showing of R, NC-17 and X-rated movies in federal prisons.

## ARGUMENT

I. THE MAGISTRATE JUDGE ERRED BY FAILING TO CONSIDER WHETHER THE COURT HAD JURISDICTION, AND THIS COURT LACKS JURISDICTION

The Magistrate Judge found that since the Court had previously rejected defendants' jurisdictional argument that it did not have to address it further on summary judgment. Article III standing, however, is a jurisdictional requirement that cannot be waived, and may be raised at any time in the proceeding. Fed. R. Civ. P. 12(h)(3). As explained in Defendants' motion papers, plaintiffs' alleged injury is simply not redressable by this lawsuit, Def. Mem. at 8-9, because even if this Court adopts the Magistrate Judge's recommendation, the Zimmer Amendment stands as an independent bar to the showing of R-rated movies. Thus, plaintiffs would obtain no relief from acceptance of the Magistrate Judge's recommendation that the BOP Policy restricting the showing of R-rated movies is invalid. Absent such redressability, the case must be dismissed for lack of jurisdiction.

II. PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO THE BOP POLICY IMPLEMENTING THE ZIMMER AMENDMENT'S PROHIBITION ON R-RATED MOVIES FAILS BECAUSE THE POLICY SATISFIES THE TURNER TEST

   A. The BOP Policy's Reliance on the Motion Picture Association of America's ("MPAA") Ratings System Does Not Make the Policy Constitutionally Infirm

The Magistrate Judge incorrectly held that defendants' reliance on the MPAA ratings system to determine whether certain films may be shown is not rationally related to the asserted legitimate penological interests. Report at 10. In making this determination, the Magistrate Judge relies on older court decisions which held that the MPAA ratings lacked definable standards and were inappropriate measures for determining whether a prohibition on showing certain films passes constitutional scrutiny. Report at 9 (citing cases). The cases relied upon by

the Magistrate Judge, however, are inapposite to the instant case because the restrictions at issue in those cases were subject to the standard of "strict scrutiny," see Swope v. Lubbers, 560 F. Supp. 1328, 1331 (W.D. Mich. 1983) (governmental conduct regulating exercise of First Amendment rights is constitutionally sound only if it passes strict scrutiny), whereas the standard here is more akin to rational basis. See Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir. 1999)(asserting that Turner standard is similar to rational-basis review). Moreover, while the MPAA ratings system may have been found to have lacked standards in 1970 and 1983 when the cases relied upon by the Magistrate Judge were decided, the current ratings system plainly does have definable standards to determine which movies receive particular ratings. According to the MPAA, an R-rated film may "include hard language, or tough violence, or nudity within sensual scenes, or drug abuse or other elements, or a combination of some of the above" while an NC-17 rating means that the movie may contain "violence or sex or aberrational behavior or drug abuse" even if it is "not necessarily . . . 'obscene or pornographic' in the oft-accepted or legal meaning of those words." See http://www.mpaa.org/movieratings/about/index.htm at 5; see also id. at 2 (explaining that in 1990, MPAA introduced brief explanations of why a particular film received its R rating and then later began applying similar explanations in other categories as well).

      Further, the Magistrate Judge completely ignored a more recent case in which a district court, applying a reasonableness test, found that the use of the MPAA ratings to filter what films were shown to high school students was constitutional. See Borger v. Bisciglia, 888 F. Supp. 97 (E.D. Wisc. 1995). The Borger court, recognizing that school systems (like the BOP) have abundant discretion, applied the following test: whether or not the school board's policy to ban students from watching R-rated movies (in this case the movie was Schindler's List) bore a

reasonable relationship to a legitimate pedagogical concern. In holding that the policy was reasonable, the court explained that while a private organization's rating system cannot be used to determine whether a movie receives constitutional protection, it was reasonable for the school board to choose to use the ratings system as a filter. Id. at 100. The court found that the ratings were a way to determine which movies were more likely to contain harsh language and nudity and thus the ratings could be used as a threshold for determining which movies not to show. Id. The court further explained that schools are non-public forums and have more discretion to censor within that environment than do bodies governing the public sphere. Id.

In the instant case, BOP (like school systems) has significant discretion and, applying the appropriate reasonableness test, the BOP Policy should similarly be upheld. Defendants respectfully refer the Court to its motion papers in which defendants have fully demonstrated that the restriction on R-rated movies is reasonably-related to several legitimate penological interests and thus satisfies the Turner analysis. Def. Mem. at 11-17.

More importantly, the Magistrate Judge's focus on the MPAA rating system is misguided. The BOP Policy in this case merely implemented a prohibition that was contained in a statute, specifically the Zimmer Amendment. Thus, it was Congress, not the BOP, who determined that R-rated movies should not be shown in prison.[1] Although plaintiffs initially challenged the constitutionality of the Zimmer Amendment, plaintiffs did not continue their statutory challenge

---

[1] Under Supreme Court jurisprudence, when a Court is called upon to review a legislative decision, an adequate factual basis is presumed to exist and a Court must defer to the judgement of the legislative body. Plyer v. Doe, 457 U.S. 202, 216 (1982). Most importantly, the Supreme Court has clearly established that a statute is "not subject to fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Beach Comm., 508 U.S. at 313

on appeal. Because the Zimmer Amendment, which uses the MPAA ratings system, has already been held constitutional by this Court, this Court should rule that the BOP Policy, which uses the same ratings system, is constitutional as well.

      B.      <u>The Magistrate Judge Inappropriately Placed the Burden of Proof on Defendants</u>

The Magistrate Judge's conclusion that the BOP Policy does not satisfy the <u>Turner</u> test should also be rejected because she inappropriately placed the burden of proof on defendants. After the Third Circuit remanded this case back to the district court, the Supreme Court issued its decision in <u>Overton v. Bazzetta</u>, 539 U.S. 126 (2003). In upholding prison regulations regarding visitation rights, the Supreme Court clarified that in a challenge to prison regulations "[t]he burden,[], is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." <u>Id</u>. at 132. The Court also appeared to recognize that under <u>Turner</u>, a regulation's connection to the BOP's interest could be "self-evident." <u>Id</u>. The Third Circuit has acknowledged the holdings of <u>Overton</u>. See <u>Williams v. Morton</u>, 343 F.3d 212, 217 (3d Cir. 2003)(quoting <u>Overton</u>).

Despite these decisions, in her Report, the Magistrate Judge fails to credit the testimony of the prison officials regarding the penological interests served by the BOP Policy and faults defendants for not providing specific evidence that the restriction on R-rated movies is reasonably related to the penological interests of prison security, order, punishment, deterrence and a safe and non-hostile work environment. Report at 14-15, 18, 19. For example, the Magistrate Judge finds that because defendants have not provided evidence that there were disturbances or violent acts among inmates associated with the showing of R-rated movies, that the current restriction is not reasonably related to prison security and order. As defendants

explained in their earlier briefs, Turner only requires a "logical connection" between the policy and the asserted goal, see 482 U.S. at 89, not empirical evidence that the policy in fact serves that goal.  See also Fraise v. Terhune, 283 F.3d 506, 518 (3d Cir. 2002)(demanding hard statistical proof is fundamentally inconsistent with Turner).   Moreover, it is certainly not logical to require BOP to wait for a disturbance or security incident to occur before BOP can take steps to prevent such harm from occurring.  Therefore, the evidence the Magistrate Judge deems required, is unnecessary and irrelevant.  See Defendants' Reply in Support of Motion for Summary Judgment and Opposition to Plaintiffs' Cross-motion for Summary Judgment at 2.  Defendants respectfully refer this Court to its Memorandum and the attached declarations which provide the requisite "logical connection" between the restriction and the legitimate penological interests served by the BOP Policy.  Additionally, contrary to Supreme Court precedent, the Magistrate Judge fails to cite to any evidence plaintiffs have provided to prove that the restriction on R-rated movies is not reasonably related to these penological interests.  Therefore, it is clear that the Magistrate Judge has improperly placed the burden of proof on defendants and her recommendation should not be adopted.

      C.      The Magistrate Judge's Conclusion that the BOP Policy Does not Satisfy Turner Because it Constitutes an Exaggerated Response must Be Rejected

The Magistrate Judge also erroneously determined that the BOP Policy's absolute ban on all R-rated movies constituted an "exaggerated response" to the asserted penological interests. Report at 13.  There are two flaws with this conclusion.  First, this conclusion is typically made during an analysis of the fourth Turner factor  – whether or not there are "obvious easy alternatives to the restriction in question;" however, the Magistrate Judge specifically stated she

did not need to consider this factor or the other two Turner factors. See Report at 19-20. Second, plaintiffs have not pointed to "an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests" as the law requires. See Turner, 482 U.S. at 91. It is not an "exaggerated response" if there are no obvious easy alternatives. The only alternative plaintiffs have suggested to is to revert back to the prior policy of individually reviewing each movie to determine if it is appropriate.[2] Pls. Opp. at 27. This alternative does not meet the high standard required under Turner because it does not address the valid penological interests identified by those charged with the responsibility of running the prison system. As supported by defendants' declarations, the showing of R-rated movies could have an impact on prison security and order as well as on the rehabilitation of inmates. Additionally, such an alternative poses administrative burdens. Therefore, plaintiffs' suggested alternative would have more than a de minimis impact on these valid penological concerns.

## CONCLUSION

For the foregoing reasons, as well as those in defendants' motion papers, this Court should reject the Magistrate Judge's Report and Recommendation and grant summary judgment to defendants.

Dated: September 19, 2005             Respectfully submitted,

                                      PETER D. KEISLER
                                      Assistant Attorney General

                                      MARY BETH BUCHANAN
                                      United States Attorney

---

[2] Of course, BOP could not unilaterally change the policy since the congressionally enacted Zimmer Amendment, which has been upheld as constitutional by this Court, independently prohibits the showing of R-rated movies.

        CHRISTY C. WIEGAND
        Assistant U.S. Attorney

        _____/s/_____
        VINCENT M. GARVEY
        MARSHA S. EDNEY
        Attorneys, Department of Justice
        Civil Division
        20 Massachusetts Ave, N.W., Room 7148
        Washington, D.C.  20530
        Telephone: (202) 514-4520

        Attorneys for Defendants