PS5370.07 RECREATION PROGRAMS, INMATE

**OPI:** FPI
**NUMBER:** 5370.07
**DATE:** December 16, 1993
**SUBJECT:** Recreation Programs,
Inmate

1. **[PURPOSE AND SCOPE §544.30. The Bureau of Prisons encourages inmates to make constructive use of leisure time and offers movies, games, sports, social activities, arts and hobbycrafts, wellness and other group and individual activities.]**

Recreation programs in the Federal Bureau of Prisons are intended to help reduce idleness and to keep inmates constructively occupied; to promote wellness as a personal goal for all inmates; to reduce personal stress and institution tension; to increase physical fitness, goal attainment, and positive life styles, both in prison and after release; and to contribute to personal and institution stability through maximum participation in formal and informal programs.

2. DIRECTIVES AFFECTED

a. Directive Rescinded

   P.S. 5370.06  Inmate Recreation Programs (09/16/86)

b. Directives Referenced

   P.S. 1600.06    Occupational Safety and Environmental Health Manual (02/25/92)
   P.S. 4500.03    Trust Fund Management Manual, Chapter 4510 (04/04/89)
   P.S. 5300.12    Education, Training, and Leisure-Time Program Standards (11/01/82)

c. Rules cited in this Program Statement are contained in 28 CFR 544.30-35.

d. Rules referenced in this Program Statement are contained in 28 CFR 544.81.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information


PLAINTIFF'S EXHIBIT 4

P.S. 5370.07
December 16, 1993
Page 2

3.  STANDARDS REFERENCED

   a.  American Correctional Association Foundation/Core Standards for
Adult Correctional Institutions (April 1989): FC2-4096.

   b.  American Correctional Association Certifiable Standards for
Adult Correctional Institutions (April 1989): C2-4242 and C2-4243.

   c.  American Correctional Association, 3rd Edition Standards, Adult
Correctional Institutions: 3-4423, 3-4424, 3-4425, 3-4426, 3-4427, and
3-4428.

4.  [DEFINITIONS §544.31.

   a.  **Leisure activities** are a wide range of activities in which
inmates may participate when not performing assigned duties.  Leisure
activities include participation in organized and informal games,
sports, physical fitness, table games, hobbycrafts, music programs,
intramural activities, social and cultural organizations, movies, and
stage shows.  Religious activities, psychological services, and
education classes are not included within this definition, except when
they are used specifically to encourage knowledge, skills and
attitudes related to leisure activity involvement.

   b.  **Organized activities** are those activities accounted for by
registration or roster of individual participants, and occur at a
scheduled time and place.

   c.  **Art work** includes all paintings and sketches rendered in any of
the usual media (oils, pastels, crayons, pencils, inks, and charcoal).

   d.  **Hobbycraft activities** include ceramics, leatherwork, models,
clay, mosaics, crochet, knitting, sculptures, woodworking, lapidary,
and other forms consistent with institution guidelines.

   e.  **Inmate wellness program activities** include screening,
assessments, goal setting, fitness/nutrition prescriptions and
counseling.]

   f.  **At-risk inmates** are those inmates who are reluctant to
participate in recreational activities because of one or more of the
following conditions: overweight, negative attitude to any physical
fitness or exercise programs, mentally, physically or emotionally
handicapped, other physical or psychological health problems.

5.  **[GOALS §544.32.  The Warden is to ensure, to the extent possible,
that leisure activities are provided to meet social, physical,
psychological and overall wellness needs of inmates.**

P.S. 5370.07
December 16, 1993
Page 3

**a. Leisure activities are designed to attract inmate participation regardless of ethnic, racial, age, or sex difference, or handicap considerations, and to enhance the potential for post-release involvement.**

**b. Leisure activities are designed to ensure that an inmate with the need has the opportunity to complete one or more activities (see 28 CFR 544.81).]**

28 CFR 544.81 is contained in the Program Statement on Education, Training and Leisure Time Program Standards.

Leisure-time goals and objectives are included in annual institution plans. In addition, Recreation Supervisors are involved in key institution meetings, as appropriate, to communicate with all departments.

6.  <u>RECREATION/LEISURE-TIME RESPONSIBILITIES</u>

    a. The Recreation Supervisor, in consultation with the Supervisor of Education, shall:

    (1)  Develop a monthly activity schedule which may be published for inmate use if appropriate. In addition, submit a monthly report to the Supervisor of Education which indicates the level of participation in the previous month's activities.

    (2)  Develop presentations for the admission and orientation inmates which include encouragement to participate in physical and/or leisure activities and information concerning the leisure-time activities available.

    (3)  Assist in the preparation of the recreation budget and maintenance of records of expenditures from Cost Center 313.

    (4)  Coordinate the unit and institution recreation activities with the Unit Management Staff. Unit managers shall develop recreation/leisure-time plans for their units, including space and staff allocations, unless special population considerations preclude a viable recreation program.

    (5)  Develop a general plan of action to identify:

        (a) those "at-risk" inmates, who are not participating in recreational activities, and

        (b) programs that encourage participation in some structured, unstructured or spectator activities.

    The Recreation Supervisor's plan of action shall include unstructured and structured recreational activities. The Recreation Supervisor may coordinate efforts with health services or psychological services in the development of these programs. Also, the Recreation Supervisor will develop a formal or informal

P.S. 5370.07
December 16, 1993
Page 4

means of leisure-time counseling to meet the needs of "at-risk" inmates.

(6)  Use contract recreation staff to assist and/or expand recreation programs, as the budget permits.

(7) Serve as a consultant to Federal Bureau of Prisons staff regarding inmate and staff physical fitness, wellness and related areas, when assigned this responsibility.

(8)  Develop guidelines for protective equipment and clothing and procedures to disseminate and enforce these guidelines.

b.  The institution Controller will develop a procedure to efficiently provide for inmate special order purchases of recreation items.  Special Purpose Orders (SPOs) should be delivered no later than six weeks from the receipt of the order by the business office, or sooner whenever possible.

7.  **[MOVIES §544.33.  If there is a program to show movies, the Supervisor of Education shall ensure that X-rated movies are not shown.]**

As well, the Supervisor of Education should exercise good judgement in showing NC-17 movies.

The use of video tapes in public performances without a licensing agreement is prohibited.  The Supervisor of Education shall strictly enforce all videotape copyright and licensing requirements.

8.  **[INMATE RUNNING EVENTS §544.34.  Running events will ordinarily not exceed 10 kilometers or 6.2 miles.  Appropriate medical staff and fluid supplies (e.g., water) should be available for all inmate running events.]**

9.  **[ART AND HOBBYCRAFT §544.35.**

**a.  An inmate engaged in art or hobbycraft activities may obtain materials through:**

**(1)  The institution art program (if one exists);**

**(2)  The commissary sales unit;**

**(3)  Special purchase commissary orders, if the sales unit is unable to stock a sufficient amount of the needed materials; or**

**(4)  Other sources approved by the Warden.**

b.  **Each inmate shall identify completed art or hobbycraft products by showing the inmate's name and register number on the reverse side of the item.**

c.  **Completed or abandoned art or hobbycraft articles must be disposed of in one of the following ways:**

(1)  **Upon approval of the Warden, by giving the item to an authorized visitor.  The quantity of items will be determined by the Warden.**

(2)  **By mailing the item to a verified relative or approved visitor at the inmate's expense.**

(3)  **By selling, through an institution art and hobbycraft sales program, if one exists, after the institution price committee has determined the sale price.]**

Prices are determined in compliance with provisions of the Trust Fund Management Manual, Chapter 4510.

[**(4)  Other methods established by the Warden.]**

In order to reduce fire hazards and to conserve space, art and hobbycraft items that are not disposed of in any of the listed ways are subject to removal and disposal at the discretion of an institution's administration.

[d.  _Restrictions_:  **Art and hobbycraft programs are intended for the personal enjoyment of an inmate and as an opportunity to learn a new leisure skill.  They are not for the mass production of art and hobbycraft items by artists or to provide a means of supplementing an inmate's income.**

(1)  **The Warden may restrict, for reasons of security and housekeeping, the size and quantity of all products made in the art and hobbycraft program.  Paintings mailed out of the institution must conform to both institution guidelines and postal regulations.  If an inmate's art work or hobbycraft is on public display, the Warden may restrict the content of the work in accordance with community standards of decency.]**

The Warden should consult with regional counsel prior to restricting the public display of inmate art work or hobbycraft to ensure that appropriate legal standards are applied and met.

[**(2)  The Warden may set limits, in compliance with commissary guidelines, on the amount of money an inmate may spend on art or hobbycraft items or materials.**

(3)  **The Warden may restrict for reasons of security, fire safety, and housekeeping, the use or possession of art and hobbycraft items or materials.]**

P.S. 5370.07
December 16, 1993
Page 6

See Section 9.c. of this Program Statement for methods of disposal.

**[(4)   Appropriate hobbycraft activities shall be encouraged in the inmate living areas.  However, the Warden may limit hobbycraft projects in the cell/living areas to those which can be contained/stored in provided personal property containers.  Exceptions may be made for such items as a painting where the size would prohibit placement in a locker.  Hobbycraft items must be removed from the living area when completed unless they are approved as personal property.**

**(5)   The Warden shall require the inmate to mail completed hobbycraft articles out of the institution at the inmate's expense, or to give them to an authorized visitor within 30 days of completion, or to dispose of them through approved sales.  However, articles offered for sale must be sold within 90 days of completion, or must be given to an authorized visitor or mailed out of the institution at the inmate's expense.]**

The Recreation Supervisor is responsible for developing a record keeping system to control on-going and completed projects.

**[(6)   Where space and equipment are limited and demand is high, the Warden may set limits on the amount of time an inmate may use a hobbycraft facility, e.g., the Warden may limit an inmate's use of any workshop or classroom to six months to make room for new students. Hobbycraft participants may be rotated to allow for maximum utilization of the resources.**

**(7)   Disciplinary action may be taken against inmates found with unauthorized hobbycraft materials in their possession.  This action may include the removal of the inmate from the hobbycraft program.]**

(8)   Material Safety Data Sheets (MSDS) shall be maintained for all toxic, flammable and caustic materials.  It is the Supervisor of Education's responsibility to ensure that the MSDS are completed and available for all staff and inmates and that relevant safety talks are provided to all persons involved with the hazardous leisure-time materials consistent with the Occupational Safety and Environmental Health Manual.

All hazardous materials will be stored and disposed of in accordance with OSHA regulations, and inventoried regularly with an effective bin card system.

\s\
Kathleen M. Hawk
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** FPI
**NUMBER:** 5370.08
**DATE:** June 13, 1994
**SUBJECT:** Recreation Programs, Inmate

1.  **[PURPOSE AND SCOPE §544.30.  The Bureau of Prisons encourages inmates to make constructive use of leisure time and offers movies, games, sports, social activities, arts and hobbycrafts, wellness and other group and individual activities.]**

Recreation programs in the Federal Bureau of Prisons are intended to help reduce idleness and to keep inmates constructively occupied; to promote wellness as a personal goal for all inmates; to reduce personal stress and institution tension; to increase physical fitness, goal attainment, and positive life styles, both in prison and after release; and to contribute to personal and institution stability through maximum participation in formal and informal programs.

2.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directive Rescinded</u>

      P.S. 5370.07  Inmate Recreation Programs (12/16/93)

   b.  <u>Directives Referenced</u>

      P.S. 1600.06    Occupational Safety and Environmental
                      Health Manual (02/25/92)
      P.S. 4500.03    Trust Fund Management Manual, Chapter 4510
                      (04/04/89)
      P.S. 5300.15    Education, Training, and Leisure-Time Program
                      Standards (12/15/93)
      P.S. 5381.03    Inmate Organizations (05/31/83)

   c.  Rules cited in this Program Statement are contained in 28 CFR 544.30-35.

   d.  Rules referenced in this Program Statement are contained in 28 CFR 544.81.

PLAINTIFF'S EXHIBIT 5

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

3.  <u>STANDARDS REFERENCED</u>

   a.  American Correctional Association Foundation/Core Standards for Adult Correctional Institutions (April 1989): FC2-4096.

   b.  American Correctional Association Certifiable Standards for Adult Correctional Institutions (April 1989): C2-4242 and C2-4243.

   c.  American Correctional Association, 3rd Edition Standards, Adult Correctional Institutions: 3-4423, 3-4424, 3-4425, 3-4426, 3-4427, and 3-4428.

4.  [**<u>DEFINITIONS</u> §544.31.**

   a.  **<u>Leisure activities</u> are a wide range of activities in which inmates may participate when not performing assigned duties. Leisure activities include participation in organized and informal games, sports, physical fitness, table games, hobbycrafts, music programs, intramural activities, social and cultural organizations, movies, and stage shows. Religious activities, psychological services, and education classes are not included within this definition, except when they are used specifically to encourage knowledge, skills and attitudes related to leisure activity involvement.**

   b.  **<u>Organized activities</u> are those activities accounted for by registration or roster of individual participants, and occur at a scheduled time and place.**

   c.  **<u>Art work</u> includes all paintings and sketches rendered in any of the usual media (oils, pastels, crayons, pencils, inks, and charcoal).**

   d.  **<u>Hobbycraft activities</u> include ceramics, leatherwork, models, clay, mosaics, crochet, knitting, sculptures, woodworking, lapidary, and other forms consistent with institution guidelines.**

   e.  **<u>Inmate wellness program activities</u> include screening, assessments, goal setting, fitness/nutrition prescriptions and counseling.]**

   f.  <u>At-risk inmates</u> are those inmates who are reluctant to participate in recreational activities because of one or more of the following conditions:  overweight; negative attitude to any physical fitness or exercise programs; mentally, physically or emotionally handicapped; and other physical or psychological health problems.

5.  [**GOALS** §544.32.  **The Warden is to ensure, to the extent possible, that leisure activities are provided to meet social, physical, psychological and overall wellness needs of inmates.**

P.S. 5370.08
June 13, 1994
Page 3

**a.  Leisure activities are designed to attract inmate participation regardless of ethnic, racial, age, or sex difference, or handicap considerations, and to enhance the potential for post-release involvement.**

**b. Leisure activities are designed to ensure that an inmate with the need has the opportunity to complete one or more activities (see 28 CFR 544.81).]**

28 CFR 544.81 is contained in the Program Statement on Education, Training and Leisure Time Program Standards.

Leisure-time goals and objectives are included in annual institution plans.  In addition, Recreation Supervisors are involved in key institution meetings, as appropriate, to communicate with all departments.

6.  <u>RECREATION/LEISURE-TIME RESPONSIBILITIES</u>

a.  The Recreation Supervisor, in consultation with the Supervisor of Education, shall:

(1)  Develop a monthly activity schedule which may be published for inmate use if appropriate, and, submit a monthly report to the Supervisor of Education indicating the level of participation in the previous month's activities.

(2)  Develop presentations for the admission and orientation program which encourage participation in physical and/or leisure activities; and information concerning the available leisure-time activities.

(3)  Assist in the preparation of the recreation budget and maintenance of records of expenditures from Cost Center 313.

(4)  Coordinate the unit and institution recreation activities with the Unit Management Staff.  Unit managers shall develop recreation/leisure-time plans for their units, including space and staff allocations, unless special population considerations preclude a viable recreation program.

(5)  Develop a general plan of action to identify:

(a)  those "at-risk" inmates, who are not participating in recreational activities, and

(b)  programs that encourage participation in some structured, unstructured or spectator activities.

The Recreation Supervisor's plan of action shall include unstructured and structured recreational activities.  The

Recreation Supervisor may coordinate efforts with health
servicesor psychological services in the development of these

programs.  Also, the Recreation Supervisor shall develop a formal
or informal means of leisure-time counseling to meet the needs of
"at-risk" inmates.

(6)  Use contract recreation staff to assist and/or expand
recreation programs, as the budget permits.

(7)  Serve as a consultant to Bureau of Prisons staff
regarding inmate and staff physical fitness, wellness and related
areas, when assigned this responsibility.

(8)  Develop guidelines for protective equipment and
clothing and procedures to disseminate and enforce these
guidelines.

b.  The institution Controller will develop a procedure to
efficiently provide for inmate special order purchases of
recreation items.  Special Purpose Orders (SPOs) should be
delivered no later than six weeks from the receipt of the order
by the business office, or sooner whenever possible.

7.  **MOVIES §544.33.  If there is a program to show movies, the
Supervisor of Education shall ensure that X-rated movies are not
shown.]**

The Supervisor of Education or his/her designee, not below the
GS-9 level, should exercise good judgement when selecting video
movie rentals.

The use of videotapes in public performances without a licensing
agreement is prohibited.  The Supervisor of Education shall
strictly enforce all videotape copyright and licensing
requirements.

Institutions are not to use Salaries and Expenses (S&E)
appropriations or any other government funds for the purchase of
premium movie channels, video licenses, or video rentals.
However, S&E funds may be used to fund basic cable television
service.

The Trust Fund will provide an allotment under Decision Unit 2
(Trust Fund Profit Sharing) to each Region which will be equal to
the number of institutions times $2,500.  This allotment can be
used to purchase a single premium cable television channel or a
video license and associated movie rentals.  The sum of the costs
for premium cable television channels, video licenses and video
rentals should be charged to accounting code X4-2-323-536-CMS,
sub-object 2599 (other services), and cannot exceed the total
Regional Allotment for the year.

The Trust Fund appropriations may not be used to fund basic

television cable service.  At the Warden's discretion, an
additional movie channel or a video license and rentals may be

purchased with inmate organization funds.  All purchases by this method must follow procedures as outlined in the Program Statement on Inmate Organizations.

8.  **[INMATE RUNNING EVENTS §544.34.  Running events will ordinarily not exceed 10 kilometers or 6.2 miles.  Appropriate medical staff and fluid supplies (e.g., water) should be available for all inmate running events.]**

9.  **[ART AND HOBBYCRAFT §544.35**

    **a.  An inmate engaged in art or hobbycraft activities may obtain materials through:**

        **(1)  The institution art program (if one exists);**

        **(2)  The commissary sales unit;**

        **(3)  Special purchase commissary orders, if the sales unit is unable to stock a sufficient amount of the needed materials; or**

        **(4)  Other sources approved by the Warden.**

    **b.  Each inmate shall identify completed art or hobbycraft products by showing the inmate's name and register number on the reverse side of the item.**

    **c.  Completed or abandoned art or hobbycraft articles must be disposed of in one of the following ways:**

        **(1)  Upon approval of the Warden, by giving the item to an authorized visitor.  The quantity of items will be determined by the Warden.**

        **(2)  By mailing the item to a verified relative or approved visitor at the inmate's expense.**

        **(3)  By selling, through an institution art and hobbycraft sales program, if one exists, after the institution price committee has determined the sale price.]**

    Prices are determined in compliance with provisions of the Trust Fund Management Manual, Chapter 4510.

    **[(4) Other methods established by the Warden.]**

    In order to reduce fire hazards and to conserve space, art and hobbycraft items that are not disposed of in any of the

listed ways are subject to removal and disposal at the discretion
of an institution's administration.

[d.  <u>Restrictions</u>.  **Art and hobbycraft programs are intended for the personal enjoyment of an inmate and as an opportunity to learn a new leisure skill.  They are not for the mass production of art and hobbycraft items by artists or to provide a means of supplementing an inmate's income.**

**(1)  The Warden may restrict, for reasons of security and housekeeping, the size and quantity of all products made in the art and hobbycraft program.  Paintings mailed out of the institution must conform to both institution guidelines and postal regulations.  If an inmate's art work or hobbycraft is on public display, the Warden may restrict the content of the work in accordance with community standards of decency.]**

The Warden should consult with regional counsel prior to restricting the public display of inmate art work or hobbycraft to ensure that appropriate legal standards are applied and met.

**[(2)  The Warden may set limits, in compliance with commissary guidelines, on the amount of money an inmate may spend on art or hobbycraft items or materials.**

**(3)  The Warden may restrict for reasons of security, fire safety, and housekeeping, the use or possession of art and hobbycraft items or materials.]**

See Section 9.c. of this Program Statement for methods of disposal.

**[(4)  Appropriate hobbycraft activities shall be encouraged in the inmate living areas.  However, the Warden may limit hobbycraft projects in the cell/living areas to those which can be contained/stored in provided personal property containers.  Exceptions may be made for such items as a painting where the size would prohibit placement in a locker.  Hobbycraft items must be removed from the living area when completed unless they are approved as personal property.**

**(5)  The Warden shall require the inmate to mail completed hobbycraft articles out of the institution at the inmate's expense, or to give them to an authorized visitor within 30 days of completion, or to dispose of them through approved sales. However, articles offered for sale must be sold within 90 days of completion, or must be given to an authorized visitor or mailed out of the institution at the inmate's expense.]**

The Recreation Supervisor is responsible for developing a record keeping system to control on-going and completed projects.

P.S. 5370.08
June 13, 1994
Page 7

**[(6)   Where space and equipment are limited and demand is high, the Warden may set limits on the amount of time an inmate may use a hobbycraft facility, e.g., the Warden may limit an inmate's use of any workshop or classroom to six months to make room for new students.   Hobbycraft participants may be rotated to allow for maximum utilization of the resources.**

**(7)   Disciplinary action may be taken against inmates found with unauthorized hobbycraft materials in their possession.   This action may include the removal of the inmate from the hobbycraft program.]**

(8)   Material Safety Data Sheets (MSDS) shall be maintained for all toxic, flammable and caustic materials.   It is the Supervisor of Education's responsibility to ensure that the MSDS are completed and available for all staff and inmates and that relevant safety talks are provided to all persons involved with the hazardous leisure-time materials consistent with the Occupational Safety and Environmental Health Manual.

All hazardous materials will be stored and disposed of in accordance with OSHA regulations, and inventoried regularly with an effective bin card system.


\s\
Kathleen M. Hawk
Director

**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

*Office of the Director*                    *Washington, DC 20534*

November 15, 1995

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM:        Kathleen M. Hawk, Director
             Federal Bureau of Prisons

SUBJECT:     Guidelines for Implementation of the Zimmer
             Amendment

This memorandum provides guidance to wardens on how provisions of
the Zimmer Amendment will be implemented in all Bureau of Prisons
(BOP) institutions.  The House and Senate have passed the Zimmer
Amendment (copy attached) to the Appropriations Bill and it is
expected to be adopted in conference in November.  In
anticipation of this, the purpose of this memorandum is to give
you an advance implementation plan, to address specific
interpretation issues and to ensure consistency in how we will
make changes in all BOP institutions.

I fully appreciate that the timing of this issue could not be
worse.  Nonetheless, all indications are this legislation is
inevitable.  Provisions of the Zimmer Amendment relate only to
the use of appropriated funds.  Given our understanding of the
intent, however, the guidance provided herein may vary slightly
from a literal reading of the amendment.

Regardless of when the Fiscal Year 1996 budget is finally
adopted, the guidance in this memorandum is **effective
immediately**.



2

A.   In-Cell Television Viewing:

This section prohibits use of funds for providing in-cell television viewing except for prisoners who are segregated from the general prison population for their own safety.

1.   The BOP typically does not provide in-cell television viewing for inmates.

2.   Except as provided in #'s 3, 4, 5 and 6 below, in-cell television viewing will not be permitted, whether funded with S&E funds, Trust Fund profits, inmate organization funds or donations from community sources.

3.   Inmates housed in cells on a regular and continuous basis (e.g., USP Marion, ADX Florence, etc.) may continue to be provided with in-cell television viewing since this is the most common medium by which they access education and religious services and since these inmates are confined for purposes related to the security of the institution, for the safety of staff and other inmates or for their own safety. S&E funds may be used to provide television viewing for these inmates. This paragraph does not afford in-cell television to inmates confined in special housing units.

4.   At medical centers, inmates confined to their cells or rooms for serious, chronic medical conditions may, at the discretion of the warden, be afforded in-cell television.

5.   Witsec units which currently provide the use of in-cell televisions may continue to do so with appropriated funds. This is allowed by the "for their own safety" provisions of the Zimmer language.

6.   Certain institutions currently provide the use of an in-cell television on a rotating basis as part of an inmate incentive award program to promote high standards of sanitation. These institutions may continue this program, but no funds of any type will be expended for the repair or upkeep of the televisions. After the televisions become inoperable, the program will cease. Institutions which currently do not have this program will not initiate it.

3

7.   The BOP will not specify a requirement that privatized
     facilities which house BOP inmates provide in-cell
     television viewing.  However, where such facilities
     offer this, they will be permitted to continue doing so
     provided the facility offers a sound correctional
     environment and there is no direct additional charge to
     the Bureau.

B.   Viewing of R, X or NC-17 Rated Movies:

     This section prohibits the use of funds for providing the
     viewing of R, X or NC-17 rated movies, through whatever
     medium presented.

     1.   Current BOP policy prohibits the showing of X-rated
          movies and the use of S&E appropriations for the
          purchase of premium movie channels, video licenses or
          video rentals.  This policy will continue.

     2.   Consistent with the recent Executive Staff's decision
          on Inmate Organizations, institutions may use remaining
          inmate organization funds until inmate organizations
          have closed-out financial operations for movies or
          videos.  After this date, only Trust Fund profits may
          be used to provide for one premium cable movie channel
          or one movie video license and movie rentals.

     3.   In FY 1995, no S&E funds will be used to provide the
          showing of R, X or NC-17 rated movies.  In order to
          allow for an effective transition from existing premium
          movie contracts, the expenditure of inmate organization
          monies (up until financial operations are closed-out)
          or Trust Fund monies for the showing of R-rated movies
          will be permitted through FY 1996.

     4.   Commencing in FY 1997, no R, X or NC-17 rated movies
          will be shown, through whatever medium presented.
          Likewise, in FY 1997, movies rented through a video
          agreement may not be R, X or NC-17 rated.

     5.   The restrictions discussed above apply to the procuring
          of movies by the following means:  through video
          licenses and/or rentals, land cable services, and
          satellite transmissions.

     6.   Inmate Organization funds (until financial operations
          are closed-out) or Trust Fund profits may be used to
          provide for Pay-for-View sports events if no R, X or
          NC-17 rated material is shown.

5

8.  Weightlifting equipment may not be transferred from one
    institution to the other.  This also applies to
    institutions within a complex (e.g., weightlifting
    equipment may not be transferred from FCI Allenwood to
    USP Allenwood).

9.  Institutions undergoing a mission change may not
    surplus their weightlifting equipment to another
    institution.

10. Institutions may not transfer weightlifting equipment
    from the inmate areas to the staff fitness areas or
    vice versa.

11. Institutions are encouraged to utilize alternatives
    such as fitness courses or equipment which enhances
    aerobic fitness (e.g., fitness stations, sit-up boards,
    exercise bikes, treadmills, etc.).  These types of
    equipment help to provide fitness activities which
    promote healthy lifestyle traits, reduce preventable
    illnesses, and are consistent with BOP Program
    Statements on Inmate Health Promotion and Disease
    Prevention and Physical Fitness and Health Education.
    Equipment should be functional, durable and be able to
    withstand heavy inmate use; however, institutions
    should not purchase equipment that gives the appearance
    of belonging in a health club (e.g., exercise bikes
    that have computerized displays).

D.  **Possession of In-cell Coffee Pots, Hot Plates or Heating
    Elements:**

    This section prohibits the use of funds for providing
    inmates with the possession of in-cell coffee pots, hot
    plates or heating elements.

        1.  Current policy precludes inmates from possessing
            these items.  This policy will continue.

E.  **Use or Possession of any Electric or Electronic Musical
    Instrument:**

    This section prohibits the use of funds for inmates' use or
    possession of electric or electronic musical instruments.

        1.  Institutions which currently have electric or
            electronic instruments may retain these
            instruments.  No appropriated funds will be used
            to purchase new or to repair existing equipment.

6

2.   New institutions will not purchase electric or electronic instruments.

3.   Trust Fund profits or inmate organization funds will not be used to purchase or repair electric or electronic equipment. Donations of these types of instruments will not be accepted.

4.   The only authorized exception is electric or electronic equipment which is used in conjunction with religious activities, stored in the chapel area and is under the supervision of the Religious Services Department. Appropriated funds may be used to purchase or maintain such equipment in all BOP facilities.

Some of the provisions of the Zimmer Amendment will not negatively affect our operations because the BOP never provided some of the amenities or services. The gradual phasing out of activities such as weightlifting, using electric musical instruments, viewing of movies, including R-rated ones, will have an impact. These activities added variety to our recreation programs which helped to keep our inmate population constructively occupied. How well the phasing out of these programs will be accepted by the inmate population will depend on a number of factors. It will be critical for wardens to address these factors with their staff to ensure successful implementation of these provisions.

1.   Candid Communication With the Inmate Population:

The inmate population should be told the impact the Zimmer Amendment provision will have on their recreation activities. Since this is a requirement of the Appropriations Bill, inmates will see the changes gradually when funds are not available to replace damaged or inoperable equipment. There is a very real possibility that the next Crime Bill, which will be debated in the near future, could go further into cutting our programs by not allowing us to keep our current equipment. We should not create false hopes with the inmates, since the impact of the Zimmer Amendment may only be the start.

Obviously, the manner in which the message is conveyed is just as important as the accuracy and substance of the message. It is very important that staff exercise strong interpersonal communication skills in getting the message out and listening to inmate concerns and issues.

7

2. __Increased Supervision in Recreation Areas:__

As accessibility to certain equipment and activities
decreases, the potential of inmate tension over limited
equipment increases. Other staff will need to assist
recreation staff in the supervision of these activities
and be alert to any problems. Good interdepartmental
communication will help to defuse small problems before
they escalate.

3. __Alternative Options:__

Institutions should develop alternative programs which
may redirect inmate involvement from program activities
being phased out to new activities which help maintain
inmate discipline and provide constructive pursuits
that cost-effectively occupy inmates' time.

The detail and examples provided in this memo are intended to
address as many questions as possible and to ensure a consistent
implementation. It is not intended to substitute for the
application of good judgment and reason. I know that these
developments are of concern to all of us. I am certain, however,
that with your personal commitment and direction, the Bureau of
Prisons can successfully implement this public policy decision.

If further clarification is needed, please contact your Regional
Director or Steve Schwalb, Assistant Director, Industries,
Education and Vocational Training.

Attachment

H.R. 2076
FY 1996 Commerce, Justice, State Appropriations Bill

Sec. 611. None of the funds made available in this Act shall be used to provide the following amenities or personal comforts in the Federal prison system—

(1) in-cell television viewing except for prisoners who are segregated from the general prison population for their own safety;

(2) the viewing of R, X, and NC-17 rated movies, through whatever medium presented;

(3) any instruction (live or through broadcasts) or training equipment for boxing, wrestling, judo, karate, or other martial art, or any bodybuilding or weightlifting equipment of any sort;

(4) possession of in-cell coffee pots, hot plates, or heating elements; or

(5) the use or possession of any electric or electronic musical instrument.



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** ADM
**NUMBER:** 5381.04
**DATE:** March 19, 1996
**SUBJECT:** Inmate Organizations

**RULES EFFECTIVE DATE:** April 18, 1996

---

1.  **[PURPOSE AND SCOPE § 551.30.  The Bureau of Prisons permits inmates and persons in the community to participate in approved inmate organizations for recreational, social, civic and benevolent purposes.]**

An organization which has inmate membership and which performs, or may perform, an activity or function related to a federal institution is considered an inmate organization.  An inmate organization may include persons from the community.

Recent Program Reviews have revealed the need for more specific guidelines for operational and reporting responsibilities and for more standard guidance as to proper activities for inmate organizations.

This Program Statement establishes the basic procedures concerning the establishment, regulation, and operation of inmate organizations and provides a uniform system whereby all organizations of this type will operate within a similar framework of administrative and financial management.  These instructions apply to all inmate organizations (e.g., social, religious, etc.).

The procedures as outlined in the following sections shall be followed.  An Institution Supplement shall be issued to implement this Program Statement at those facilities operating an inmate organization (see Section 15).

2.  PROGRAM OBJECTIVES.  The expected results of this program are:

   a.  Inmate will be provided recreational, social, civic, and benevolent benefits through inmate organizations.


PLAINTIFF'S EXHIBIT

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

b.  The activities of each inmate organization will be monitored and regulated by designated staff.

c.  Each inmate organization will abide by Bureau policy and maintain accurate records or be subject to sanction or dissolution.

3.  <u>DIRECTIVES AFFECTED</u>

a.  <u>Directive Rescinded</u>

P.S. 5381.03    Inmate Organizations (05/31/83)

b.  <u>Directives Referenced</u>

P.S. 4500.04    Trust Fund/Warehouse/Laundry Manual
(12/15/95)
P.S. 4400.03    Property Management Manual (02/27/96)

c.  Rules cited in this Program Statement are contained in 28 CFR 551.30-37.

4.  <u>STANDARDS REFERENCED</u>.  None.

5.  **[<u>APPROVAL OF AN ORGANIZATION</u> § 551.31**

**a.  An inmate must submit a request for recognition of a proposed inmate organization to the Warden.  The organization may not become active without the Warden's approval.**

**b.  The Warden may approve an inmate organization upon determining that:**

**(1)  The organization has a constitution and bylaws duly approved by its members; the constitution and bylaws must include the organization's purpose and objectives, the duties and responsibilities of the officer(s), and requirements for activities reporting and operational review; and**

**(2)  The organization does not operate in opposition to the security, good order, and discipline of the institution.]**

Inmates are authorized to participate in only those organizations which the Warden has recognized and sanctioned.

6.  <u>MANAGEMENT RESPONSIBILITIES</u>.  The Warden at each institution shall ensure that inmate organizations adhere to the requirements of this Program Statement.  The Warden is responsible for submitting an annual certification to the appropriate Regional Director certifying that each inmate organization complies with

this Program Statement.

P.S. 5381.04
March 19, 1996
Page 3

This certification, at a minimum, shall contain those items
described in Section 7 below and note any deviations or
discrepancies from this Program Statement, along with a
corrective plan of action.  This certification must be submitted
by March 31 of each year beginning in March 1997.  The
certification requirements for 1996 are outlined in an Operations
Memorandum governing transition activities to implement this
Program Statement.

To provide adequate management oversight, the Warden, at his/her
discretion, may authorize official duty time to allow staff to
assist inmate organizations to fulfill the requirements of this
Program Statement.

7.  **[STAFF SUPERVISION** § 551.32

   **a.  The Warden shall appoint a staff member as the
institution's Inmate Organization Manager (IOM).  The IOM shall
be responsible for monitoring the activities of the institution's
inmate organizations and staff sponsors.]**

   (1)  Each Warden shall appoint a member of the institution's
Executive Staff as the IOM to have responsibility for monitoring
the activities of inmate organizations.  The member assigned
shall be no lower than the Associate Warden level, with the
designation becoming a part of the Institution Supplement on
Inmate Organizations.

   (2)  The IOM is responsible for reviewing the information
submitted by inmate organizations and for providing written
annual certification to the Warden, no later than January 31 of
each year, (beginning in January 1997) that the inmate
organization(s) are in compliance with all applicable Bureau
policies.  The certification shall include, at a minimum, the
following:

         (a)  Institution Supplement is current;

         (b)  Constitution/bylaws of organization(s) are current;

         (c)  Status of each organization's compliance with
              policy;

         (d)  Summary of activities of inmate organizations.

   (3)  The IOM shall review the information various inmate
organization staff sponsors submit to ensure activities are
proper and authorized and within the requirements of this Program
Statement.

   (4)  The IOM shall have the authority to recommend whatever

administrative action is necessary to achieve compliance with
Bureau policy and/or audit findings.  The action may include
sanctions as specified in Section 10.e. below.

P.S. 5381.04
March 19, 1996
Page 4

(5)   The IOM shall coordinate the activities of the inmate organizations through the assigned staff sponsor for each organization.

**[b.   The Warden or designee shall assign to a staff sponsor responsibility for supervising the activities of an individual inmate organization.   The staff sponsor's duties are performed while in official duty status.]**

The staff sponsor's Position Description shall reflect the duties of inmate organization sponsorship including those noted below.   The staff sponsor shall be responsible for:

(1)   Ensuring that a file is maintained on each inmate organization which includes:

- a copy of the Institution Supplement;
- a copy of the organization's current constitution/bylaws;
- certifications on the status of the organization by the Warden;
- quarterly activity statements;
- approved requests for activities and funding; and
- documentation to show any request for correcting deviations noted during a review and the responses from the institution.

(2)   Ensuring appropriate approvals are obtained for inmate organization activities.

(3)   Overseeing or ensuring oversight is provided at all inmate organization activities.

(4)   Coordinating the process of requesting funds for inmate organization activities and acknowledging the receipt of any goods and services obtained for inmate organization activities.

(5)   Ensuring that the collection and payment of dues (if applicable) are properly processed (see Section 8 below).

(6)   Ensuring that the quarterly summary of inmate organization activities is submitted to the IOM by the 15th of the month following the end of each quarter.   The activities report shall include any problems encountered with functions of an inmate organization and recommendations for resolution.

(7)   Ensuring that an annual operational review as noted below is conducted and any Program Review deviations related to the inmate organization are properly addressed.

Staff, including the sponsor, may volunteer time to work in

a capacity other than sponsor.  This shall neither be part of the
volunteer's regularly prescribed duties nor be reflected in the
volunteer's Position Description.

P.S. 5381.04
March 19, 1996
Page 5

8.   **[DUES § 551.33.  Dues may be collected if they are required by the national organization, are collected by that same national organization, and the rate and method of collection have been approved by the Warden.  No portion of the dues may be kept by the inmate organization for use at the institution.  The organization may not make payment of dues a requirement of membership for an inmate who lacks funds.]**

Only those dues required by the national organization of an inmate organization (i.e., Jaycees) may be collected.  These dues shall be collected from inmates using form BP-199 or BP-201 with the funds sent directly to the national organization headquarters.  No portion of the dues may be kept for use at the institution.  No Trust Fund Profit Sharing funds may be used to pay organization dues.

9.   CONSTITUTION/BYLAWS

   a.  Each organization shall have a written constitution and a set of bylaws which have been duly approved by the membership.  The following items shall be included:

      (1)  General statement regarding the purpose and objectives of the organization.

      (2)  Designation of an officer of the organization who shall be responsible for the records of the organization.

      (3)  Requirement for a quarterly summary of activities of the inmate organizations during the period.  These summary statements for each organization must be prepared to reflect the distinct activity and/or project.

      (4)  Requirement for an operational review to be conducted at least annually, by someone other than an official or inmate of the organization.  This review shall use the current Bureau Program Review Guidelines for inmate organizations and include the annual review of the Institution Supplement.

      (5)  Requirement for copies of items described in Section 7.b.(6) above to be furnished to the IOM no later than the 15th day of the month following the end of each quarter.

      (6)  Statement banning the inmate organization from conducting fund-raising activities or possessing assets.

   b.  The constitution/bylaws must contain the specific requirements as listed above.  Merely specifying compliance with this Program Statement is not sufficient to guarantee knowledge of its requirements.

P.S. 5381.04
March 19, 1996
Page 6

10.   **[ORGANIZATION ACTIVITIES § 551.34**

   **a.   An officer of the inmate organization must submit a written request for approval of an activity to the Warden or designee. Activities include, but are not limited to, meetings, guest speakers, sports competitions, banquets, or community programs. Activities may not include fund-raising projects.  The request must specifically include:**

      **(1)   Name of the organization;**

      **(2)   Nature or purpose of the activity;**

      **(3)   Date, time, and estimated duration of the activity;**

      **(4)   Estimated cost;**

      **(5)   Information concerning guest participation;**

      **(6)   Other pertinent information requested by the Warden.**

   **b.   The Warden may approve the request if the activity:**

      **(1)   Does not conflict with scheduled inmate work or program activities;**

      **(2)   Has confirmation of staff supervision;**

      **(3)   Can be appropriately funded when applicable (see § 551.36);.]**

   28 CFR § 551.36 refers to Section 12 of this Program Statement.

   **[(4)   Does not conflict with the security, good order, and discipline of the institution.]**

   The Warden must have approved a written request for any activity including meetings to be held by an inmate organization.

   This request shall include those items referenced above and any special requirements requested by the Warden which are included as a part of the Institution Supplement.  A copy of any approved inmate organization activity request shall be maintained in the file for that organization.

   At the Warden's discretion, an annual calendar of organization activities or events may be approved.  If this method is used, any revisions to the approved calendar would be handled in the

manner described above.  A copy of the approved calendar shall
then accompany any specific funding request.

Staff shall supervise all scheduled activities and meetings.
The organization may not hold meetings at times which conflict
with scheduled inmate work or program activities.

**[c.  When an activity requires the expenditure of government
funds, the Warden ordinarily shall require reimbursement from
non-inmate participants (guests or members).]**

The attendance of guests at institution organization meetings
and activities requires the Warden's approval.  The Warden shall
ordinarily require guests to purchase a meal ticket when
attending banquets when the government incurs the cost.  The
government may incur the cost only for banquets open to the
general inmate population.  Upon the Warden's approval, guest
meal tickets may be furnished without charge to persons whose
service to the facility is in the best interests of the
government as provided for in the Property Management Manual.

**[d.  Each inmate organization shall be responsible for
maintaining accurate records of its activities.]**

Inmate organizations shall maintain accurate records of the
activities, requests, and approvals as outlined in this Program
Statement.

**[e.  The activities of an inmate organization may be suspended
temporarily due to noncompliance with Bureau policy.  The IOM is
responsible for recommending the specific suspension sanction for
the Warden's approval.  The inmate organization is to receive
written notice of the proposed suspension sanction and shall have
the opportunity to respond to the Warden.  Continued
noncompliance with Bureau policy shall result in an increase in
the severity of the suspension sanction and may include
withdrawal of approval of the organization.]**

The inmate organization shall receive written notice of such
recommendation and shall have the opportunity to respond.  Any
sanction taken shall be commensurate with the violation(s)
detected and the number of violations and must be approved by the
Warden.

11.  **[<u>WITHDRAWAL OF APPROVAL OF AN ORGANIZATION</u> § 551.35.  The
Warden may withdraw approval of an inmate organization for
reasons of the security, good order, and discipline of the
institution, or in accordance with § 551.34 (e).]**

28 CFR § 551.34(e) refers to Section 10.e. of this Program
Statement.

The Warden shall provide written notification to an inmate

organization when the approval of the inmate organization is
withdrawn.  The notice shall include the reason for the action.

12.  [FUNDING § 551.36.  **The Bureau of Prisons may fund approved
activities of inmate organizations or organization requests for
purchase of equipment or services for all inmates subject to the
availability of designated funds.**]

a.  Funding of Approved Inmate Organization Activities.  An
activity of an inmate organization which requires funds may be
approved by the Warden for expenditure from available institution
Trust Fund Profit Sharing funds (funds which have been approved
by the Chief, Trust Fund Branch and allotted to the institution
through the budget execution process).  If the Warden approves a
request for funds, the regular Bureau procurement process shall
be used to obtain the item or services for the inmate
organization.  Procedures for inmate organizations to request
funding are described below.

b.  Requests for Funding.  If an inmate organization activity
requires funding or an inmate organization wishes to request a
purchase of equipment or a service for all inmates, a written
request shall accompany the activity approval request.  This
written request for funding shall be specific and include all
necessary details to facilitate the procurement by the Financial
Management Office.  Only those items/activities authorized by
Bureau policy may be purchased from Trust Fund Profit Sharing
funds.

c.  Uses of Trust Fund Profit Sharing Funds for Inmate
Activities.  Trust Fund profits may not be used for the personal
benefit of individual inmates, but shall be used to provide
benefit or the opportunity to benefit all inmates.  Profits may
not be used to purchase items ordinarily procured from funds
appropriated by Congress for the care of prisoners.  The
following types of activities may be funded from Trust Fund
profits:

(1)  Beginning in FY 1997, no Trust Fund funds may be used
for a premium movie cable television channel or video rentals
which provide for the viewing of R, X, or NC-17 unless procedures
have been implemented to prohibit these types of rated movies
from being viewed by the inmate population.

(2)  Purchase of recreational equipment and supplies for
sports or activity events except that no funds may be used for
any instruction (live or broadcast) or training equipment for
boxing, wrestling, judo, karate, or other martial arts, or for
the purchase of any bodybuilding or weightlifting equipment.

(3)  Non-personal property type prizes for Bingo
events/competitions.

(4)  Entertainment such as for speakers, plays, musical

groups.

    (5)   Instructors for craft or recreational activities.

(6)   Purchase of educational tapes and books.

(7)   Foods such as ice cream, popcorn, etc., if purchased through regular procurement processes and made available free of charge to inmates.

(8)   Special meals for events such as banquets if in accordance with other Bureau policy.

d.   <u>Prohibitions on Trust Fund Profit Uses</u>.   The following types of activities may not be funded from Trust Fund profits:

(1)   Loans to inmates.

(2)   Donations to charities or other outside organizations.

(3)   Dues to national organizations.

(4)   Purchase of in-cell coffee pots, hot plates, or heating equipment.

(5)   Purchase of electric or electronic musical instruments.

(6)   Purchase of bodybuilding or weightlifting equipment.

e.   <u>Review of Trust Fund Profit Use Requests</u>.   The Warden shall refer any request for the expenditure of Trust Fund Profit Sharing funds for any questionable inmate organization activity to the Regional Comptroller.   If the Regional Comptroller concurs, the request shall be forwarded to the Chief, Trust Fund Branch for final determination.

<u>Note</u>:   It is not necessary for an institution to have an inmate organization(s) to receive funds from the Trust Fund Profit Sharing Program.   The institution will receive an appropriate distribution which can be expended at the Warden's discretion under the general guidelines for uses of Trust Fund profits as described in the Trust Fund/Warehouse/Laundry Manual.

13.   [**<u>ACCOUNTABILITY FOR ACCUMULATED FUNDS</u> § 551.37.   Effective April 18, 1996, through June 30, 1996, all inmate organizations must, in accordance with Bureau policy and generally accepted accounting principles, close-out the financial records and dispose of all assets previously accumulated by them.**]

Effective April 18, 1996, inmate organizations may no longer engage in fund-raising activities.   The Warden shall ensure that the requirements for terminating financial activities of inmate organizations are completed and a certification of this close-out prepared for submission to the Regional Director by September 1, 1996.   The Regional Director shall certify to the Assistant

Director for Administration by September 30, 1996, that all
institutions have properly closed the financial records/accounts
for its inmate organizations.

P.S. 5381.04
March 19, 1996
Page 10

14. <u>DONATIONS</u>.  Any inmate or group of inmates choosing to make a charitable donation to an outside group shall do so through the use of a form BP-199 or BP-201.  No Trust Fund Profit Sharing funds may be used to make these donations.

15. <u>INSTITUTION SUPPLEMENT</u>.  An Institution Supplement shall be prepared at each institution with inmate organizations.

   a. <u>Required Information</u>.  The Institution Supplement shall include, but is not limited to, the following information for each organization:

      (1)  The name of the approved inmate organization.

      (2)  The rate and method of collecting dues, if applicable.

      (3)  Types of activities of the organization.

      (4)  Designation of an IOM.

   b. <u>General Information</u>.  In addition, the Institution Supplement shall include at least the following general information:

      (1)  Any restrictions concerning organization activities.

      (2)  Process for requesting approval for inmate organization activities and the process for requesting funds for any particular activity.

      (3)  Guidance on the types of activities which may be considered for funding from the institution's Trust Fund Profit Sharing funds.

      (4)  Records required for inmate organization activities.

      (5)  Instructions for staff sponsors not covered in the Program Statement.

The annual review of the Institution Supplement shall be performed at the time of the annual operational review referred to in Section 9.a.


                                        \s\
                                   Kathleen M. Hawk
                                   Director